UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD B. POWERS,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>AT&T, et al.,<br><br>　　　　Defendants. | Case No. 15-cv-01024-JSC<br><br>**ORDER RE MOTION FOR MORE DEFINITE STATEMENT OR MOTION TO DISMISS**<br><br>Re: Dkt. No. 15 |

Plaintiff Richard B. Powers ("Plaintiff"), proceeding pro se, brings this action against his former employer, Defendant Pacific Bell Telephone Company, Inc. ("Pac Bell") and its benefits plan administrator, AT&T Services, Inc. ("AT&T" and together, "Defendants") in connection with Plaintiff's retirement and claim of benefits thereafter.[1] In the First Amended Complaint ("FAC"), Plaintiff alleges that Defendants violated various provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1371, discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, and are liable for breach of contract and breach of fiduciary duty. (Dkt. No. 11 at 1.) Now pending before the Court is Defendants' motion for a more definite statement or, in the alternative, to dismiss seven claims of the FAC. The Court finds this matter suitable for disposition without

---

[1] Plaintiff initially named "AT&T" as a Defendant. (*See* Dkt. No. 1.) In the First Amended Complaint ("FAC"), Plaintiff named AT&T, Inc. and AT&T Retirement Benefit Plan as Defendants. (Dkt. No. 11 ¶¶ 3-4.) Plaintiff filed a notice of voluntary dismissal of AT&T, Inc. and AT&T Retirement Benefit Plan. (Dkt. No. 13.) Defense counsel accepted service on behalf of Pac Bell and AT&T Services, Inc. (Dkt. No. 14.) Defendants contend that they are the properly named Defendants in this action, and Plaintiff's opposition now lists them in the case caption. (Dkt. No. 16 at 1 & ¶¶ 3-4.) The Court directs the Clerk's Office to change the case caption to reflect Pacific Bell and AT&T Services, Inc. as Defendants.

oral argument. *See* N.D. Cal. Civ. L.R. 7-1(b). Having considered the parties' submissions and the relevant legal authority, the Court GRANTS Defendants' motion for a more definite statement and for dismissal of certain claims.

**COMPLAINT ALLEGATIONS**

*Plaintiff's Employment History*

Plaintiff, a Marine Corp veteran, worked at AT&T from December 1999 until September 2011. (Dkt. No. 11 ¶¶ 1, 2.) He began working as a splicing technician, then worked as a cable locator from 2000 to 2005. (*Id.* ¶ 7.) During that time, he consistently received positive performance reviews. (*Id.*)

In 2005 or 2006, Judith Cooper became the manager of Plaintiff's maintenance crew. (*Id.* ¶ 8.) At Plaintiff's first meeting with Ms. Cooper, she offered him a lower-paying position. (*Id.*) Plaintiff declined the position, and Ms. Cooper responded by saying that Plaintiff would "be in the load the rest of [his] life"—*i.e.*, responding to service calls. (*Id.* ¶ 8.) Ms. Cooper then transferred Plaintiff back to his original position at the company. (*Id.*) After six months, she transferred him to the troubleshooting team, but without providing adequate tools or training. (*Id.*) In 2006, Ms. Cooper mentioned that a 34-year-old employee was more productive than Plaintiff, who was then 59 years old. (*Id.* ¶ 9.) Plaintiff complained to another manager about the age-related comment, but the manager responded that "age discrimination is hard to prove." (*Id.*)

In 2007 or 2008, Plaintiff was assigned a new supervisor, Victor Diaz. (*Id.* ¶ 10.) Mr. Diaz provided Plaintiff with a "sunrise," which is a radar device used to locate a problem in a phone line that improves workers' efficiency. (*Id.* ¶ 11.) When Ms. Cooper discovered that Plaintiff was using a sunrise, she instructed another employee to take it away from him. (*Id.*) Nevertheless, Plaintiff's positive performance reviews continued. (*Id.* ¶ 12.)

On May 9, 2008, Plaintiff submitted to Ms. Cooper and Mr. Diaz a letter expressing concerns about AT&T's safety, age discrimination, and veteran status/priorities. (*Id.* ¶ 13.) Plaintiff's union held a meeting with Mr. Diaz to discuss the complaint, but no changes were made. (*Id.* ¶ 14.) Instead, Ms. Cooper continued her discrimination. (*Id.*) For example, she denied Plaintiff's request for a bucket truck, which improves a worker's safety and efficiency. (*Id.*

2

¶ 15.) Plaintiff complained to management that he thought the denial was related to age discrimination. (*Id.* ¶ 15.) At a dinner celebrating Plaintiff's 10-year anniversary of employment with AT&T, Ms. Cooper encouraged colleagues to call Plaintiff "old man," which they did. (*Id.* ¶ 19.) In 2011, when Plaintiff returned to work after his mother's funeral, Ms. Cooper repeatedly asked Plaintiff in front of other colleagues when he was going to retire. (*Id.* ¶ 20.) And in late July 2011, Plaintiff was directed to close open work tickets, even though there was still work to be performed; Plaintiff thought this was related to age discrimination, as well. (*Id.* ¶ 21.)

In late July or early August 2011, Plaintiff told Ms. Cooper that he would retire in September. (*Id.* ¶ 22.) When asked by Mr. Diaz, Plaintiff agreed that he felt like he was being forced to retire. (*Id.*) Plaintiff's administrative manager received his written notice of retirement. (*Id.* ¶¶ 22, 23.) As part of his retirement, Plaintiff took a rollover IRA retirement plan. (*Id.* ¶ 24.)

*AT&T's Post-Retirement Conduct*

In 2011, AT&T gave notice to Plaintiff's union, the National Communication Workers of America, that he had retired. (*Id.* ¶¶ 25-26.) In November 2011 the union confirmed his retirement. (*Id.* ¶ 26.) Although Plaintiff is a "participant and beneficiary of AT&T's ERISA-governed benefit plan[,]" he never received his benefits—such as severance and health, dental, and life insurance—once he retired. (*Id.* ¶ 27.) As a result, on July 10 and 12, 2012, Plaintiff filed an administrative ERISA claim with AT&T and a complaint with the EEOC. (*Id.* ¶ 28.)

At the end of July 2012, AT&T sent Plaintiff a letter denying his claim for benefits on the grounds that he did not satisfy the "Modified Rule of 75."[2] (*Id.* ¶ 30.) AT&T later conceded that the rule was not applicable to Plaintiff. (*Id.*) Plaintiff appealed the denial. (*Id.*) While the appeal was pending, in November 2012, Plaintiff received a letter from AT&T stating, "We are required to send the attached notice to active and former employees of AT&T who are eligible for AT&T-sponsored health care coverage." (*Id.* ¶ 32.) The attached notice was AT&T's Summary Plan Description (referred to through the FAC as "SPD") related to health and welfare and Care Plus

---

[2] The FAC does not define the "Modified Rule of 75." According to the SEC, Modified Rule of 75 provides that "specified combinations of age plus years of service at termination" render a retiree eligible for service pension benefits. *See* AT&T, Inc., SEC No-Action Letter, 2008 WL 5433178, at *3 (Nov. 19, 2008).

3

1  plans. (*Id.*) In December 2012 Plaintiff received a letter from his local union stating that AT&T
2  had "coded" him as retired. (*Id.* ¶ 33.) In April 2013, Plaintiff received a notice from AT&T
3  advising him to log on to AT&T's online benefits program to review "AT&T Retiree News." (*Id.*
4  ¶ 34.)

5  At the end of June 2013, AT&T denied Plaintiff's appeal, affirming the denial of his claim
6  for benefits. (*Id.* ¶ 35.) In the letter, AT&T acknowledged that the "Modified Rule of 75" did not
7  apply to Plaintiff, but his claim was nevertheless denied because he "received a 'vested pension'
8  rather than a 'service pension' and could not change his status to 'retired.'" (*Id.* ¶ 35.) "None of
9  these explanations are legitimate bases for denying Plaintiff's benefits." (*Id.* ¶ 36.) The EEOC
10  provided Plaintiff a right-to-sue letter in December 2014. (*Id.* ¶ 38.)

11  In the caption of the FAC, Plaintiff lists the following nine causes of action: (1) improper
12  denial of ERISA benefits (§ 502); (2) violation of ERISA (§ 503); (3) violation of the anti-cutback
13  rule (§ 204(g)); (4) interference with ERISA benefits; (5) violation of the Older Worker's Benefit
14  Protection Act; (6) failure to provide plan documents; (7) breach of fiduciary duty; (8) breach of
15  written contract; and (9) age discrimination ("constructive discharge"). (*Id.* at 1.) The FAC
16  otherwise contains no recitation of the claims for relief. However, in the prayer for relief Plaintiff
17  seeks compensatory damages, statutory penalties and damages, interest, attorneys' fees and costs,
18  and injunctive relief. (*Id.* at 6.)

19  **LEGAL STANDARDS**

20  **I.  Rule 12(e)**

21  Federal Rule of Civil Procedure 12(e) provides that a party may move for a more definite
22  statement of a pleading this is "so vague or ambiguous that the party cannot reasonably prepare a
23  response." A Rule 12(e) motion should be considered in light of the liberal pleading standards of
24  Rule 8(a). *See Bureerong v. Uvawas*, 922 F. Supp. 1450, 1461 (C.D. Cal. 1996) (*citing Sagan v.
25  Apple Comp., Inc.*, 874 F. Supp. 1072, 1077 (C.D. Cal.1994) ("Motions for a more definite
26  statement are viewed with disfavor and are rarely granted because of the minimal pleading
27  requirements of the Federal Rules.").

28  A Rule 12(e) motion should be granted when the complaint is so vague that the defendant

4

cannot discern the nature of the plaintiff's claims and thus cannot frame a response. *See Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981); *Boxall v. Sequoia Union High Sch. Dist.*, 464 F. Supp. 1104, 1114 (N.D. Cal. 1979). If the complaint notifies the defendant of the substance of the plaintiff's claim, a 12(e) motion should not be granted. *See QTL Corp. v. Kaplan*, No. C-97-20531 EAI, 1998 WL 303296, at *2 (N.D. Cal. Feb. 2, 1998) (noting that 12(e) motions should be denied "where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted."); *see also San Bernardino Pub. Emps. Ass'n v. Stout*, 946 F. Supp. 790, 804 (C.D. Cal. 1996) ("A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her."). A 12(e) motion should also be denied if the detail sought is obtainable through discovery. *Davison v. Santa Barbara High Sch. Dist.*, 48 F. Supp. 2d 1225, 1228 (C.D. Cal. 1998).

## II.     Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) contends that the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 544 (internal citations and quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

1  However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a
2  plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels
3  and conclusions, and a formulaic recitation of the elements of a cause of action will not
4  do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Determining whether
5  a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the
6  reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64.
7  Additionally, pro se pleadings are generally liberally construed and held to a less stringent
8  standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th
9  Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-
10 *Iqbal*, noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is
11 pro se, . . . to construe the pleadings liberally and to afford the petitioner the benefit of any
12 doubt." *Id.* at 342 (internal citations and quotation marks omitted). Nevertheless, the Court may
13 not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of*
14 *the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982).
15       Generally, when a complaint is dismissed, "leave to amend shall be freely given when
16 justice so requires." *Carvalho v. Equifax Info. Servs., LLC,* 629 F.3d 876, 892 (9th Cir.
17 2010); *see* Fed. R. Civ. P. 15(a). The Ninth Circuit has "repeatedly held that a district court
18 should grant leave to amend even if no request to amend the pleading was made, unless it
19 determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v.*
20 *Smith*, 203 F.3d 1122, 1130 (9th Cir.2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.  Plaintiff Must Provide a More Definite Statement**

23       Plaintiff's FAC is too bare to enable Defendants to fully and properly respond or to
24 proceed to discovery, so a more definite statement is required. *See Famolare, Inc.*, 525 F. Supp. at
25 949; *Boxall*, 464 F. Supp. at 1114. While the caption of the FAC lists nine causes of action, the
26 body of the FAC itself contains only factual recitations along with a prayer for relief. The FAC
27 does not contain claims for relief that clearly indicate the factual basis for each particular cause of
28 action and it leaves Defendants guessing as to which causes of action are alleged against them.

This does not enable Defendants or the Court to understand the claims with any reasonable certainty. *See Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000) (noting that the Federal Rules require separate counts "to enable the defendant to frame a responsive pleading"). Plaintiff shall have leave to file a Second Amended Complaint ("SAC"). The SAC must include a section that sets forth each cause of action and the factual basis therefor, and must indicate the particular Defendant or Defendants against which the claim is alleged.

## II. Several Causes of Action Fail to State a Claim

Although the Court could dismiss Plaintiff's FAC on Rule 12(e) grounds alone, it nonetheless addresses the Rule 12(b)(6) arguments as applied to the causes of action listed in the case caption in light of Plaintiff's pro se status and with the intention of resolving as many deficiencies as possible in one round of amendment. Defendants contend that seven of the nine causes of action—all but improper denial of ERISA benefits and age discrimination—fail to state a claim upon which relief may be granted.

As a threshold matter, the Court notes that the facts section of Plaintiff's opposition includes a significant number of factual allegations not present in the FAC. The Court does not consider new facts alleged in a plaintiff's opposition to a motion to dismiss. *See Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (citation omitted). If there are additional facts that Plaintiff contends support his claims for relief, he must include them in the pleading itself. The Court will therefore address the sufficiency of the FAC with reference only to the facts alleged therein.

### 1. *Improper Denial of ERISA Benefits*

The second cause of action listed in the case caption is violation of Section 503 of ERISA. This section provides in relevant part that every employee benefit plan shall "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial," and "(2) shall afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The purpose of Section 503 is to ensure that plans comply with these procedural requirements. *See Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980).

1    Because the FAC does not include a recitation of claims, Defendants and the Court can, at
2    best, guess at the basis of the claim. The FAC alleges that AT&T sent Plaintiff a denial letter,
3    then Plaintiff appealed, and AT&T denied the appeal in writing. (Dkt. No. 11 ¶¶ 30-31, 35-36.)
4    Plaintiff then alleges that the explanations AT&T provided were not "legitimate bases for
5    denying" his claim. (*Id.* ¶ 36.) These allegations do not plausibly suggest that the plan failed to
6    provide notice in writing explaining the specific reason for the denial in violation of the first prong
7    of Section 503. *See* ERISA Section 503, 29 U.S.C. § 1133(1). Nor do these factual allegations
8    plausibly establish that Plaintiff was denied the opportunity for a full and fair review of the denial
9    in violation of the second prong. Instead, they reflect Plaintiff's disagreement with the reasons
10   given for the denial; this is not enough to plausibly allege a violation of ERISA Section 503's
11   procedural requirements. In his opposition Plaintiff adds additional facts that "full and fair review
12   was not possible" and was "deficient" because it was deliberately deceptive, ignored relevant
13   evidence, and was untimely, but these facts nowhere appear in the FAC so the Court cannot
14   consider them. *See Broam*, 320 F.3d at 1026. As written, the FAC fails to state a claim for
15   violation of Section 503 and must be dismissed. In the SAC, if Plaintiff wishes to bring a Section
16   503 claim, he must indicate (1) which Defendant is alleged to have violated Section 503; and (2)
17   how that Defendant failed to comply with the statutory grievance procedures.

2.    *Violation of the Anti-Cutback Rule*

19   The third claim listed in the FAC's case caption is violation of the anti-cutback rule,
20   Section 204(g) of ERISA, 29 U.S.C. § 1054(g). The rule provides that "[t]he accrued benefit of a
21   participant under a plan may not be decreased by an amendment of the plan." 29 U.S.C. §
22   1054(g). "Section 204(g) of ERISA applies only to formal plan amendments[,]" not to the plan
23   administrator's mere interpretation of a plan. *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 1121
24   (9th Cir. 2000); *accord Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 984-
25   85 (9th Cir. 1997). Here, the FAC does not allege a formal plan amendment. It therefore fails to
26   state a claim for violation of ERISA's anti-cutback rule. In Plaintiff's opposition, he makes
27   reference to an FTC-adopted age retirement rule and suggests that AT&T may have changed its
28   position regarding how that rule applied to Plaintiff. First, as discussed above, the Court does not

1  consider facts alleged for the first time in an opposition. *See Broam*, 320 F.3d at 1026. And in
2  any event, the facts alleged in the opposition are confusing and do not plausibly allege a plan
3  amendment that resulted in reduced benefits. In the SAC, if Plaintiff still wishes to allege
4  violation of the anti-cutback rule, he must allege facts sufficient to plausibly establish that the plan
5  administrator adopted a formal plan amendment changing its position on a particular rule. In
6  addition, Plaintiff must make clear whether he brings this claim against both Defendants or only
7  one.

### 3. *Interference with ERISA Benefits*

9  The third cause of action listed in the caption of the FAC is for "interference with ERISA
10 benefits." The FAC does not cite a particular statutory section, but Plaintiff's opposition appears
11 to agree with Defendants' assumption that the claim is brought pursuant to ERISA Section 510, 29
12 U.S.C. § 1140. Section 510 provides, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

17 29 U.S.C. § 1140. To state a claim for interference with benefits under Section 510, a plaintiff
18 must allege facts sufficient to plausibly establish that he was entitled to an ERISA-protected right,
19 that he suffered an adverse employment action, and that the employer acted with the specific intent
20 to interfere with this right. *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989);
21 *Bastien v. ABF Freight Sys., Inc.*, No. 2:12-cv-02755, 2014 WL 813118, at *3 (E.D. Cal. Feb. 28,
22 2014) (citations omitted). As there is no recitation of claims here, it is not entirely clear exactly
23 what the ERISA-protected right Plaintiff is alleging; the Court assumes for the purpose of
24 resolving the instant motion that it is the right to retirement benefits under the plan.
25 With respect to the second element, an adverse employment action, the FAC alleges that
26 Plaintiff retired in the face of pressure from his supervisor, which included the following conduct
27 between 2006 and 2011: mentioning that a younger employee was more productive than Plaintiff,
28 denying Plaintiff's request for a particular type of equipment (a bucket truck), directing Plaintiff to

close open jobs without completing the work, asking Plaintiff what year he would retire, and calling him an "old man." (Dkt. No. 11 ¶¶ 9, 15, 19, 20, 21.) Plaintiff alleges that he told his manager that he felt like he was being forced to retire. (*Id.* ¶ 22; *see also id.* ¶ 1 (alleging that Plaintiff was "forced to retire").) In his opposition, Plaintiff argues that he has alleged constructive discharge. The Ninth Circuit has held that "constructive discharge" is established if working conditions "become sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job[.]" *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) (citations omitted); *see also Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) (noting that constructive discharge is found where a working environment is "so intolerable and discriminatory as to justify a reasonable employee's decision" to leave). To state a claim for constructive discharge, a plaintiff must allege that the discriminatory conduct was severe and pervasive, not just offhand comments or isolated incidents. *See Brooks*, 229 F.3d at 930. Put another way, "[i]n order to amount to constructive discharge, adverse working conditions must be unusually 'aggravated' or amount to a 'continuous pattern' before the situation will be deemed intolerable." *Cronk v. Rekitt Benckiser Pharms., Inc.*, No. C 13-3245 MMC, 2013 WL 4532036, at *2 (N.D. Cal. Aug. 26, 2013) (quoting *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994)). Assuming for the purposes of the instant motion that this element is sufficiently alleged, the FAC still fails to state a claim for interference under Section 510 because the third element is not sufficiently pleaded as is explained below.

A plaintiff pleading a Section 510 claim must allege facts to plausibly establish that the employer took the adverse employment action with the specific intent to interfere with the employee's ERISA right. *See Kimbro*, 889 F.2d at 881; *Bastien*, 2014 WL 813118, at *3. Here, there are no facts from which such a conclusion can be inferred with any measure of plausibility. The facts in the FAC give rise to an inference that the constructive discharge occurred due to age discrimination, but not that Plaintiff's supervisor or AT&T more generally had some plan to force Plaintiff into retirement to deprive him of otherwise available benefits. The Section 510 claim must be dismissed on this ground. In the opposition, Plaintiff alleges additional facts that might support such an inference—namely, that AT&T purposefully concealed facts about the availability

10

of certain retirement benefits in order to force him to choose retirement and forgo the benefits. The Court cannot consider those facts now. *Broam*, 320 F.3d at 1026. But the facts may help Plaintiff plead his plan administrator's intent to interfere with ERISA benefits if Plaintiff wishes to replead this claim in the SAC.

### 4. *Violation of the Older Worker's Benefit Protection Act*

The fifth cause of action listed in the caption of the FAC is for violation of the Older Worker's Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f). The OWBPA amended the ADEA "to protect the rights and benefits of older workers" and "governs the effect under federal law of waivers or releases on ADEA claims." *Syverson v. Int'l Bus. Machs. Corp.*, No. C-03-04529 RMW, 2007 WL 2904252, at *2 (N.D. Cal. Oct. 3, 2007) (citation omitted). While the Ninth Circuit has not addressed whether there is a right to affirmative relief under OWBPA, most courts have concluded that the statute does not create an independent cause of action. *See id.* at *5 (collecting cases); *Whitehead v. Okla. Gas & Elec. Co.*, 187 F.3d 1184 (10th Cir. 1999) (holding that a plaintiff cannot "maintain a separate cause of action based solely on an OWBPA violation" because the OWBPA "simply determines whether an employee has, as a matter of law, waived the right to bring a separate and distinct ADEA claim"); *Brokaw v. Qualcomm, Inc.*, No. 01cv1172 DMS (AJB), 2004 WL 7197415, at *4 (S.D. Cal. Jan. 6, 2004) (dismissing cause of action based solely on OWBPA violation); *Williams v. Gen. Motors Co.*, 901 F. Supp. 252, 254 (E.D. Mich. 1995) (same); *EEOC v. Sears, Roebuck & Co.*, 883 F. Supp. 211, 215 (N.D. Ill. 1995) (same). To the extent that Plaintiff's FAC alleges a cause of action based solely on the OWBPA, it is dismissed with prejudice. Plaintiff may not bring a claim directly under the OWBPA in his SAC.

### 5. *Failure to Provide Plan Documents*

The sixth cause of action listed in the case caption is failure to provide plan documents. In his opposition, Plaintiff confirmed that he intends to bring this cause of action under ERISA Section 501(a), 29 U.S.C. § 1132(a)(1)(A), which provides a cause of action to enforce ERISA Section 502(c), which provides that

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the

11

court's discretion be personally liable . . . for such refusal[.]

29 U.S.C. § 1132(c)(1)(B). To state a claim for violation of Section 502(c), a plaintiff must allege "(1) that he is a plan participant or beneficiary; (2) that he has made a written request to a plan administrator for information that falls within the purview of ERISA's disclosure requirements; and (3) that the plan administrator failed to provide the requested documents within thirty days of the written request." *Wargotz v. NetJets, Inc.*, Civ. No. 09-4789 (WJM), 2010 WL 1931247, at *3 (D.N.J. May 13, 2010) (citing 29 U.S.C. § 1132(c)(1)(B)). Here, the FAC meets the first element, but not the latter two. First, Plaintiff does not allege that he made a written request for plan-related information. Moreover, the paragraph of the FAC that Plaintiff highlights in his opposition as giving rise to an inference of a Section 502 violation actually compels the opposite conclusion: he points to a paragraph that alleges that AT&T actually provided plan documents. (Dkt. No. 11 ¶ 32.) Thus, this cause of action is dismissed with leave to amend.

Notably, Plaintiff's opposition makes several references to other requests for documents that went unanswered. Although the Court does not consider these allegations in evaluating the FAC as written, *see Broam*, 320 F.3d at 1026, to the extent that Plaintiff wishes to include these facts in his SAC, the Court notes that the facts alleged in the opposition do not indicate when such requests were made, whether they were in writing, and what documents were sought. Such details will be necessary to state a claim for a Section 502(c) violation.

6. *Breach of Fiduciary Duty*

The next cause of action listed in Plaintiff's FAC is "breach of fiduciary duty." Because there is no recitation of claims, it unclear whether Plaintiff seeks to bring this claim directly under state common law or through ERISA. Plaintiff's opposition, however, clarifies that he intends to bring the claim under ERISA.[3]

---

[3] In any event, to the extent that Plaintiff brings the claim under state law, it is completely preempted by ERISA. The statute "includes expansive pre-emptive provisions that are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health v. Davila*, 542 U.S. 200, 208 (2004) (citations omitted). Thus, ERISA preempts "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). "Relate to" is given a broad interpretation such that "where the existence of an ERISA plan is a critical factor in establishing liability under a state cause of action, the state law claim is preempted." *Wise v. Verizon Comm'cns, Inc.*, 600 F.3d 1180, 1190 (9th Cir. 2010) (citations

12

Two separate ERISA provisions provide for liability for breach of fiduciary duty; however, Plaintiff does not indicate under which provision he asserts his claim. One provision by which an individual might bring suit for a breach of a fiduciary duty is ERISA Section 502(a)(3). This subsection provides that a plan participant or beneficiary may bring a civil action against the plan to enjoin a practice that violates ERISA or otherwise obtain equitable relief. 29 U.S.C. § 1132(a)(3). "The Ninth Circuit has held that § 502(a)(3) is a 'catchall' provision that offers relief only where the plaintiff cannot obtain relief under other sections of ERISA. [Thus, i]f other claims are 'asserted under discrete ERISA provisions, the "catchall" provision is not available as a source of relief.'" *Beaston v. Sundt Cos.*, 804 F. Supp. 2d 1011, 1017 (D. Ariz. 2011) (quoting *Ford v. MCI Comm'cns Corp. Health & Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir. 2005), *overruled on other grounds by Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011)). As Plaintiff has asserted a number of other claims under ERISA, he may not bring a claim under the catchall provision. *See, e.g.*, *Beaston*, 804 F. Supp. 2d at 1017.

Second, ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), provides that a plan participant or beneficiary may bring a civil action for relief under ERISA Section 509, 29 U.S.C. § 1109. This provision requires a fiduciary to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use" and provides for liability when the plan breaches its fiduciary duty, requiring the fiduciary to restore to the plan any profits the fiduciary made through plan assets and otherwise notes that the fiduciary "shall be subject to other equitable or remedial relief as the court may deem appropriate[.]" 29 U.S.C. § 1109(a). Defendants argue that Plaintiff may not bring a claim under this provision because he is making a claim only on his own behalf as

---

omitted). Here, because the breach of fiduciary duty claim must arise out of Defendants' alleged role as plan administrator, to pursue remedies for such claims Plaintiff "must do so under ERISA[,]" so his state law claims are preempted. *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1008 (9th Cir. 1998), *as amended* (Aug. 3, 1998) (holding that claims arising out of defendant's role as plan administrator are preempted by ERISA); *see, e.g.*, *Yamauchi v. Cotterman*, --- F. Supp. 3d ----, No. C-14-1378 EMC, 2015 WL 1346885, at * (N.D. Cal. Mar. 24, 2015) (dismissing state law claims for breach of fiduciary duty against plan administrator due to ERISA preemption); *Cox v. Eichler*, 765 F. Supp. 601, 606 (N.D. Cal. 1990) (dismissing state law claims for breach of fiduciary duty and breach of contract against plan administrator due to ERISA preemption).

13

1  an individual participant and not on behalf of the plan as a whole.

2  Defendants are correct that the Supreme Court held in *Massachusetts Life Insurance Co. v. Russell*, 473 U.S. 134 (1985), that Section 502(a)(2) provides only "remedies that would protect the entire plan, rather than [merely] the rights of an individual beneficiary." *Id.* at 142. But the Supreme Court has since narrowed the scope of its holding in *Russell*, stating that "*Russell*'s emphasis on protecting the 'entire plan' from fiduciary misconduct reflects the former landscape of employee benefit plans." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 254 (2008). *Russell* involved a traditional defined benefit plan, while *LaRue* addressed a defined contribution plan. Thus, courts read *LaRue* to mean that an individual participant or beneficiary in a defined contribution plan may recover for damage to his account alone, and thus the "'entire plan' principle of *Russell* [ ] is inapplicable to defined contribution plans." *Beaston*, 804 F. Supp. 2d at 1016 (citing *LaRue*, 552 U.S. at 255-56); *see also Peabody v. Davis*, 636 F.3d 368, 373 (7th Cir. 2011) (interpreting *LaRue* as holding that "a participant in a defined contribution plan may bring a § 502(a)(2) action for breach of fiduciary duty as to an individual account). The FAC here identifies the plan at issue only as an "ERISA-governed benefit plan" without further explanation of the type of plan. (*See, e.g.*, Dkt. No. 11 ¶¶ 4, 27.) And the FAC seeks both monetary damages and equitable relief; as there is no recitation of claims, it is not clear what relief Plaintiff seeks as a remedy for each particular cause of action. (*See* Dkt. No. 11 at 6.) Drawing all inferences in Plaintiff's favor, the Court cannot conclude that Plaintiff is alleging a traditional defined benefit plan that falls within *Russell*'s scope. However, in considering whether to amend, Plaintiff is cautioned that he cannot state a claim for relief under Section 502(a)(2) to recover as an individual instead of to recover funds to the plan as a whole if his plan is, in fact, a defined benefit plan as in *Russell*. Either way, money damages are unavailable to Plaintiff.

And in any event, the FAC as written also leaves the Court and Defendants in the dark as to the theory of breach. Fiduciaries breach their duties if, for example, they mislead plan participants or misrepresent the terms of a plan. *See Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995) (citation omitted). If this is indeed what Plaintiff seeks to claim, he must make this clear in the FAC itself and provide facts that make this breach plausible.

14

For each of these reasons, Plaintiff's breach of fiduciary duty is dismissed with leave to amend. If Plaintiff includes this claim in his amended complaint, he shall allege whether he is seeking relief as to a defined contribution plan or a traditional defined benefit plan.

### 7. *Breach of Contract*

The final claim for relief listed in the case caption is for breach of contract. In his opposition, Plaintiff insists that his breach of contract claim is valid, but he does not elucidate the basis of the claim. On the one hand, he cites state laws governing contract claims, which would suggest he brings a breach of contract claim under California state law; on the other, he invokes the Commerce Clause as the basis for a federal claim. However, Plaintiff's breach of contract claim is solely related to his claim for retirement benefits under this plan, which Plaintiff alleges is an ERISA plan. His claim for breach of contract is therefore completely preempted by ERISA and must be dismissed with prejudice. *See Lea v. Republic Airlines, Inc.*, 903 F.2d 624, 631-32 (9th Cir. 1990) (dismissing claims for breach of contract due to ERISA preemption).

## CONCLUSION

For the reasons explained above, the Court GRANTS Defendants' motion for a more definite statement and dismissal for failure to state a claim. Specifically, Plaintiff's claims under the Older Worker's Benefit Protection Act and for breach of contract are dismissed with prejudice. Plaintiff shall have leave to file a Second Amended Complaint ("SAC") to reassert all other claims, but a more definite statement of all re-asserted claims is required. If Plaintiff chooses to file an SAC, he must include a recitation of claims that separately sets forth each cause of action and indicates the defendant or defendants against whom each claim is alleged along with the facts supporting each particular claim. Plaintiff must file his SAC by September 28, 2015. Failure to file an SAC may result of dismissal of the claims discussed in this Order with prejudice.

The case management conference currently scheduled for September 10, 2015 is continued to November 12, 2015 at 1:30 p.m., and a joint case management conference shall be filed seven days prior to the conference.

The Court again encourages Plaintiff to seek free assistance from the Northern District's Pro Se Help Desk, United States Courthouse, San Francisco, 450 Golden Gate Avenue, 15th

Floor, Room 2796, San Francisco, CA 94102, or the Help Desk at the Oakland Federal Courthouse, 1301 Clay Street, 4th Floor, Room 470S, Oakland, CA 94612.  Appointments can be made in person or by calling 415-782-8982.

This Order disposes of Docket Nos. 15 and 16.

**IT IS SO ORDERED.**

Dated: September 3, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge