UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD B. POWERS,<br>　　　　Plaintiff,<br>　v.<br>AT&T, et al.,<br>　　　　Defendants. | Case No. 15-cv-01024-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. No. 43 |

Plaintiff Richard B. Powers ("Powers"), proceeding pro se, brings this action against his former employer, Defendant Pacific Bell Telephone Company, Inc. ("Pacific Bell") and its benefits plan administrator, AT &T Services, Inc. ("AT &T Services" and together, "Defendants") in connection with Plaintiff's retirement. In the Second Amended Complaint ("SAC"), Plaintiff alleges that Defendants violated various provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1371 and discriminated against him on the basis of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. (Dkt. No. 39 at 1.)[1] Now pending before the Court is Defendants' motion to dismiss three claims of the SAC. Having considered the parties' submissions, and having had the benefit of oral argument on December 3, 2015, the Court GRANTS Defendants' motion to dismiss the SAC's second, third, and fourth claims.

**BACKGROUND**

The factual background was addressed in the Court's Order dismissing the First Amended

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Complaint ("FAC"). *Powers v. AT &T*, No. 15-01024-JSC, 2015 WL 5188714, at *1-3 (N.D. Cal. Sept. 3, 2015). Because the SAC has added some factual allegations and changed the claims alleged, this background is based on the SAC allegations and judicially noticeable documents.[2]

*Plaintiff's Employment History*

Plaintiff, a Marine Corp veteran, worked at AT&T from December 1999 until September 2011. (Dkt. No. 39 ¶¶ 1-2.) At some point, Plaintiff also joined the company's air pressure group, which monitored pressure to prevent cable failures and outages. (*Id.*) During that time, he consistently received positive performance reviews. (*Id.*)

In 2005 or 2006, Judith Cooper became the manager of Plaintiff's maintenance crew. (*Id.* ¶ 8.) Ms. Cooper had a history of having older technicians file claims of age discrimination and tool denial grievances against her. (*Id.*) At Plaintiff's first meeting with Ms. Cooper, she removed him from the air pressure group and offered him a lower-paying position. (*Id.* ¶ 9.) Plaintiff declined the position, and Ms. Cooper responded by saying that Plaintiff would "be in the load the rest of [his] life"—*i.e.*, responding to service calls. (*Id.* ¶ 10.) Ms. Cooper replaced Plaintiff with a younger technician. (*Id.*) She then assigned Plaintiff back to his original position at the company. (*Id.*) She transferred him to the troubleshooting team without providing adequate tools or training. (*Id.*)

Sometime in 2006, in conversation with a visiting manager, Ms. Cooper brought up the age of another employee, asking how old he was, with an emphasis on the word old. (*Id.* ¶ 11.) The visiting manager directly asked Plaintiff how old he was, noting that he did not "look that

---

[2] Under Federal Rule of Civil Procedure 201, a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably by questioned." A court may take judicial notice of material that are incorporated by reference or necessarily relied upon by the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). This includes the full text of documents that are partially quoted in the complaint. Here, Defendants request that the Court take judicial notice of the June 28, 2013 letter from AT&T's Eligibility and Enrollment Appeal Committee to Plaintiff describing the denial of Plaintiff's appeal for retirement benefits. (Dkt. No. 51.) The SAC quotes from and describes the letter. (*See, e.g.*, Dkt. No. 39 ¶¶ 59, 62.) Accordingly, the Court GRANTS Defendants' request to take judicial notice of the letter. Of course, the Court notices only the existence of the letter and does not credit the truth of any fact recounted or matter asserted therein. *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070 (N.D. Cal. 2010).

old." (*Id.*) During a suspension hearing related to an incident in which the tools were stolen from Plaintiff's truck, one of the women implied that a younger, 34-year-old technician was more productive than Plaintiff, who was then 59 years old. (*Id.*) Plaintiff complained to another manager about the age-related comment, but the manager responded that "age discrimination is hard to prove." (*Id.* ¶ 12.)

In 2007 or 2008, Plaintiff was assigned a new supervisor, Victor Diaz. (*Id.* ¶ 13.) Mr. Diaz provided Plaintiff with a "sunrise," which is a radar device used to locate a problem in a phone line that greatly improves workers' efficiency. (*Id.* ¶¶ 14-15.) When Ms. Cooper learned that Plaintiff was using a sunrise, she instructed another employee to take it away from him. (*Id.* ¶ 15.) Nevertheless, Plaintiff's positive performance reviews continued. (*Id.* ¶ 17.)

On May 9, 2008, after continued comments about his age, tool denials, and being passed over for positions for which he was qualified, Plaintiff submitted to Ms. Cooper and Mr. Diaz a letter expressing concerns about Pacific Bell's safety, age discrimination, and veteran status. (*Id.* ¶ 18.) Plaintiff's union held a meeting with Mr. Diaz and Ms. Cooper the next day, but no changes were made. (*Id.* ¶ 19.) Instead, Ms. Cooper continued her discrimination. (*Id.*) For example, she denied Plaintiff's request for a bucket truck, which improves a worker's safety and efficiency. (*Id.* ¶ 20.) At some point, Plaintiff complained to his administrative manager, May Lee, about Ms. Cooper's discrimination and tool denials. (*Id.* ¶ 21.) Ms. Lee reported the complaint to David Myers, who offered to speak with Ms. Cooper, but apparently that did not solve the problem. (*Id.* ¶ 22.) The next day, Plaintiff received a defective device in lieu of the sunrise he desired. (*Id.*) In front of other technicians, Ms. Cooper stated that Plaintiff was "ratting people out" by complaining. (*Id.* ¶ 23.)

Nevertheless, in 2009 Plaintiff remained in the top five to ten percent of technicians, often performing extra work beyond his assigned tasks. (*Id.* ¶ 24.) Ms. Cooper instructed Plaintiff to stop using his locating skills, which left him less able to perform. (*Id.*) One incident arose out of Plaintiff's involvement in the company's installation of eight new telephone lines for a particular customer, where Ms. Cooper threatened to fire Plaintiff for reassigning the task to a night shift just as other younger technicians had done without reprimand. (*Id.* ¶¶-27 25.)

Meanwhile, in 2009 or early 2010, a "Retirement Package was offered[.]" (*Id.* ¶ 27.) Plaintiff signed the package, but it was "withdrawn." (*Id.*) Then, throughout the summer of 2011, Ms. Cooper repeatedly asked Plaintiff when he planned to retire. (*Id.* ¶ 37.) Considering the retirement package offered to him in 2010, Plaintiff told another manager, Mr. Myers, that he thought he would retire in 2012. (*Id.*) Mr. Myers responded by asking Plaintiff why he wasn't going to retire that year—*i.e.*, in 2011. (*Id.* ¶ 38.) Plaintiff construed this as Mr. Myers being in on Ms. Cooper's attempt to oust older workers like Plaintiff. (*Id.*) Plaintiff then gave Ms. Cooper verbal notice that he would retire on September 15, 2011. (*Id.* ¶ 39.) Plaintiff gave written notice of his retirement, which he refers to in the SAC as "'semi'-retirement" without further explanation. (*Id.* ¶ 39.) Administrative Manager May Lee and other managers confirmed in August 2011 that they recognized Plaintiff's retirement notice. (*Id.* ¶ 41.) That month, Plaintiff opened an IRA-eligible retirement plan with Citibank. (*Id.* ¶ 44.)

When asked by Mr. Diaz, Plaintiff agreed that he felt like he was being forced to retire. (*Id.* ¶¶ 40-41.) But Plaintiff did not say anything to anyone else about his feelings of forced retirement; since he learned that Mr. Myers shared Ms. Cooper's feelings, he thought he might lose his job—which would cause him to lose his benefits—so he chose to retire instead. (*Id.* ¶ 41.)

Plaintiff's last day of work with AT&T was September 15, 2011. (*Id.* ¶ 42.) At a meeting that day, Ms. Cooper referred to Plaintiff's departure as a "resignation/retirement[.]" (*Id.* ¶ 43.)

*AT &T's Post-Retirement Conduct*

Following his last day of work, Plaintiff expected to receive a retirement package, given his participation in AT&T's ERISA-governed benefit plan. (*Id.* ¶¶ 46, 49.) In particular, he expected to receive $34,000 of severance pay, $14,000 in supplemental income, reduced-cost AT&T phone services worth approximately $1,000 per year, vision and dental insurance worth over $1,100 per month, life insurance valued at $70,000, and a standard Medicare reimbursement of $1,200 per year. (*Id.* ¶ 50.) Instead, Ms. Cooper substituted the retirement package with "Exit Package," materials a former employee receives after being fired. (*Id.* ¶ 45.) Ms. Cooper and Mr. Myers refused to answer Plaintiff's questions about his eligibility for retirement benefits. (*Id.* ¶ 47.)

In late September 2011, AT&T gave notice to Plaintiff that he was not considered retired, and his healthcare coverage would end and his only option was to sign up and pay for COBRA coverage. (*Id.* ¶ 49.) Specifically, Plaintiff was told that he did not count as retired because he did not satisfy the "Modified Rule of 75."[3] (*Id.* ¶ 49.) On the other hand, on November 8, 2011, Plaintiff received a letter from his union, the National Communication Workers of America, confirming his retirement. (*Id.*) Two years later, when the union sent him a mailing directing him to "log on to retiree news" for benefit information, AT&T blocked his ability to log on. (*Id.*)

In May of 2012, "an AT&T bill for COBRA payments showed a credit of over $6,000" indicating that AT&T was actually paying Plaintiff's medical bills, as it should have been even though Plaintiff was also paying himself. (*Id.* ¶ 51.) When Plaintiff called to inquire about the credit, AT&T promised to reimburse Plaintiff for his unnecessary COBRA payments. (*Id.*) The refund never came. (*Id.*)

On July 10 and 12, 2012, Plaintiff filed an administrative ERISA claim for review of the benefits denial pursuant to ERISA Section 503 and a complaint with the EEOC. (*Id.* ¶ 52.) By the end of the month, AT&T sent a letter to Plaintiff denying his claim for retirement benefits on the grounds that he did not satisfy the Modified of Rule 75. (*Id.* ¶ 54.) Thus, AT&T insisted that Plaintiff was not retired. (*Id.*)

Meanwhile, Plaintiff received some letters from both the company and his union that indicated his status as retired and benefits-eligible. For example, on November 23, 2012, AT&T sent Plaintiff a letter stating that the company is "required (ERISA) to send the attached notice to active and former employees of AT&T who are eligible for AT&T-sponsored health care coverage." (*Id.* ¶ 55.) Enclosed with the letter were AT&T's Summary Plan Description relating to health and welfare and Care Plus plans. (*Id.* ¶ 55.) The mailing did not include the company's Summary Plan Description relating to pensions, which was never made available to Plaintiff during the course of his Section 503 administrative proceedings. (*Id.*) Similarly, on December 27,

---

[3] As the Court explained in the Order dismissing the FAC, according to the SEC the Modified Rule of 75 provides that "specific combinations of age plus years of service at termination" render a retiree eligible for service pension benefits. *See* AT&T, Inc., SEC No-Action Letter, 2008 WL 5433178, at *3 (Nov. 19, 2008).

1   2012, Plaintiff's union sent him a letter stating that he was "coded as retired" according to "the

2   company." (*Id.* ¶ 57.)

> In June 2013 AT&T sent Plaintiff a letter addressing his appeal of the benefits denial. (Id. ¶ 59.) The letter indicated that AT&T's Eligibility and Enrollment Appeal Committee had
> considered all relevant information . . . including the information provided in your claim and appeal; the records maintained by the AT&T Benefits Center and the Fidelity Service Center; the provisions of [the Plan] . . . ; the Summary Plan Description (the 'SDP') of the Plan dated April 2007, as well as the specific circumstances regarding your appeal.

(Dkt. No. 51-1 at 6.) The letter described the Summary Plan Description's definitions of former employees eligible for benefits, and concluded that AT&T's earlier letter incorrectly cited the Modified Rule of 75, which did not in fact apply to Plaintiff. (*Id.* at 7.) However, the Committee nonetheless confirmed the denial of benefits on the grounds that Plaintiff received a vested pension and not a service pension and therefore was not eligible for post-employment medical benefits available to retirees. (*Id.*) Plaintiff contends that all Pacific Bell employees have vested pensions, so that should not be a basis to deny him retirement benefits. (*Id.* ¶ 63.) He posits that the internal conflict at AT&T—*i.e.*, the company stating that the Modified Rule of 75 was to blame and later coming up with the vested pension excuse—indicates that Pacific Bell and AT&T were deliberately preventing Plaintiff from obtaining benefits. (*Id.* ¶ 69.) AT&T's misrepresentation that the Modified Rule of 75 barred him from retirement status was also communicated to the EEOC investigator looking into Plaintiff's age discrimination case. (*Id.* ¶¶ 66-67.)

Plaintiff called dozens of times (the SAC does not indicate whom or what) to discuss his retiree status and sent a request for materials on December 31, 2012 and January 5, 2013. (*Id.* ¶ 61.) Plaintiff later found the Pension Summary Plan Description on the internet, which contradicts AT&T's denial of retirement benefits. (*Id.* ¶¶ 55-56.)

***Procedural History***

Plaintiff initiated this action on March 4, 2015. On September 4, 2015 the Court granted Defendants' motion for a more definite statement and motion to dismiss five of the seven counts of the FAC. *Powers*, 2015 WL 5188714, at *1. Plaintiff has since filed the SAC, in which he

brings the following five claims: (1) improper denial of ERISA benefits pursuant to ERISA Section 502 against AT&T Services; (2) violation of ERISA Section 503 against AT&T Services; (3) interference with ERISA Benefits in violation of ERISA Section 510 against Pacific Bell; (4) failure to provide plan documents, bad faith, and abuse of discretion against AT&T Services; and (5) age discrimination through constructive discharge against Pacific Bell.  Defendants move to dismiss the SAC's second, third, and fourth claims for failure to state a claim.

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) contends that the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Under Federal Rule of Civil Procedure 8(a)(2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 544 (internal citations and quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the court "accept [s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663-64. Additionally, pro se pleadings are generally liberally construed and held to a less stringent

standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010), the Ninth Circuit held that courts must still liberally construe pro se filings post-*Iqbal*, noting that "[w]hile the standard is higher, our obligation remains, where the petitioner is pro se, . . . to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342 (internal citations and quotation marks omitted). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## DISCUSSION

### I. Claim Two: Violation of ERISA Section 503

Plaintiff's second claim for relief, against AT&T Services only, alleges violation of ERISA Section 503, 29 U.S.C. § 1133. Section 503 provides in relevant part that every employee benefit plan shall "(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reason for such denial," and "(2) shall afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133. The purpose of Section 503 is to ensure that plans comply with these procedural requirements. *See, e.g.*, *Cherene v. First Am. Fin. Corp. Long-Term Disability Plan*, 303 F. Supp. 2d 1030, 1036 (N.D. Cal. 2004) (noting that Section 503's full and fair review requirements are about "procedural irregularities").

In its Order dismissing the FAC, the Court concluded that in any amended complaint Plaintiff must indicate which defendant is alleged to have violated Section 503 and "how that defendant failed to comply with the statutory grievance procedures." *Powers*, 2015 WL 5188714, at *5. Plaintiff's SAC Section 503 claim is alleged against AT&T Services only. (Dkt. No. 39 at 20.) The actual recitation of claims, however, contains only the following allegation of AT&T Services' Section 503-violating conduct: "Defendant failed to comply with ERISA regulations and requirements of Section 503 by knowing or having at [its] disposal the retiree's status, and yet ignoring that information, for the purpose of denying him and his wife[ ] benefits, and/or failing to properly investigate the Plaintiff's retiree status." (*Id.* ¶ 118.) This allegation, even when coupled

with the rest of the SAC's factual allegations, does not state a claim for violation of Section 503's first prong—failure to provide adequate notice in writing of the basis for a denial. In fact, the SAC and judicially noticeable documents compel the opposite conclusion: AT&T Services first explained in writing that Plaintiff's benefits were denied due to the Modified Rule of 75, and later explained in writing that his benefits were denied not because of that rule but because he received a vested pension, not a service pension. (*Id.* ¶¶ 52, 54, 59, 62; *see also* Dkt. No. 51-1.) While Plaintiff's opposition suggests that the June 28, 2013 denial letter did not provide a clear, specific reason for the denial of benefits, this argument is both not alleged in the SAC and belied by the letter itself. (*See* Dkt. No. 51-1 (informing Plaintiff that his claim was denied because he received a vested pension, not a service pension).) Plaintiff may disagree with the reason, but AT&T Services provided a clear, specific reason for the denial.

Plaintiff's claim fits more comfortably in Section 503's second prong—the absence of full and fair review for denied claims. He identifies three reasons why AT&T's review of his request for benefits and appeal of his denial did not result in full and fair review.[4] First, Plaintiff contends that AT&T ignored relevant evidence. The SAC paragraphs that Plaintiff cites in support of this argument are inapposite; the SAC nowhere alleges that AT&T failed to review any particular evidence, only that there was an internal conflict between AT&T's stated position and the Pension Summary Plan Description ("SPD"). (*See, e.g.*, Dkt. No. 39 ¶¶ 47-75.) Thus, Plaintiff has failed to state a Section 503 claim on this ground.

Second, Plaintiff alleges that AT&T failed to provide him with relevant documents—in particular, the Pension SPD. (Dkt. No. 39 ¶¶ 75, 85 (alleging that AT&T never mailed Plaintiff the full Pension SPD, which interfered with full and fair review required under Section 503).) Federal regulations require that the plan administrator provide, "upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the

---

[4] In the SAC itself, Plaintiff also alleged that he was denied full and fair review because of the conflict of interest that arose due to AT&T's role as both plan sponsor and plan administrator. (Dkt. No. 39 ¶ 87.) Plaintiff does not respond to Defendants' argument that this scenario creates no conflict, and thus concedes the issue. *See Ardente v. Shanley*, No. 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence.").

9

1  claimant's claim for benefits" for there to be full and fair review.  29 C.F.R. § 2560.503-

2  1(h)(2)(iii).  Relevant documents include, among others, documents "relied upon in making the

3  benefit determination; "submitted, considered, or generated in the course of making the benefit

4  determination"; or "constitutes a statement of policy or guidance with respect to the plan[.]"  *Id.*

5  § 2560.503-1(m)(8).

6  Plaintiff does not explain in the SAC or elsewhere how the *Pension* SPD is relevant.  The

7  June 2013 denial letter referred exclusively to the Health Care Network Plan SPD, including citing

8  specific paragraphs of that SPD to provide the definition of "service pension."  (Dkt. No. 51-1.)

9  Assuming, nonetheless, that the Pension SPD is relevant to Plaintiff's benefits claim, the SAC

10  does not plausibly allege that Plaintiff ever requested the Pension SPD—only that it was withheld,

11  and a request is required to show that withholding documents prevented full and fair review.  *See*

12  *Fishman v. Zurich Am. Ins. Co.*, 539 F. Supp. 2d 1036, 1049 (N.D. Ill. 2008) (noting that the

13  plaintiff-claimant had made two specific requests for a summary plan description, and the

14  complete version was not provided).  Instead, the SAC only contains the general allegation that

15  Plaintiff sent a request for materials on December 31, 2012 and January 5 2013 including "copies

16  [of] information including some paperwork within the scope of AT&T[ ] that caused Plaintiff to

17  be not retired" (Dkt. No. 39 ¶ 61), and that AT&T Services did not provide him the Pension SPD

18  (*id.* ¶ 70, 78, 81, 82), but the remaining paragraphs that Plaintiff cites do not allege that Plaintiff

19  ever requested the Pension SPD or that AT&T Services relied on it, triggering a duty to disclose.

20  (*See id.* ¶¶ 57, 69, 73-75, 83-86, 117,-119.)  Thus, Plaintiff has failed to allege that AT&T

21  Services' failure to provide him the Pension SPD prevented full and fair review of his adverse

22  benefits determination.

23  Finally, Plaintiff insists that AT&T Services' change in the explanation of the denial

24  deprived him of the opportunity to submit evidence that would have been relevant to the benefits

25  determination.  While the SAC includes allegations about AT&T Services' change in explanation

26  (*see, e.g.*, Dkt. No. 39 ¶¶ 54-59), it does not allege that the change in explanation deprived

27  Plaintiff of a full and fair review.  (*Id* . ¶¶ 118-119.)  Further, while a late-in-the-game justification

28  for benefits may state a claim for a Section 503 violation, *see Cherene*, 303 F. Supp. 2d at 1036

United States District Court
Northern District of California

(noting that the administrator's delay in providing an explanation of an adverse benefits determination until it was too late for the plaintiff to contest the finding or offer evidence constitutes a denial of full and fair review), at oral argument Plaintiff conceded that he had the opportunity to respond to the June 2013 denial letter and, in fact, did so.  His complaint is that AT&T Services does not agree with him, not that he did not have the opportunity to present his position.

Accordingly, the Court grants the motion to dismiss the SAC's second claim.  The dismissal shall be without leave to amend.  Plaintiff has already amended his complaint once following a Court order on Defendants' motion for a more definite statement, and the Court had an extensive colloquy with Plaintiff at oral argument on the pending motion to dismiss.  Based on that colloquy, it is apparent that Plaintiff cannot fix the defects in the Section 503 claim.  *See Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (leave to amend denied where amendment would be futile).

## II.     Claim Three: Interference with Benefits

The SAC's third claim is against Pacific Bell for interference with ERISA benefits in violation of ERISA Section 510, 29 U.S.C. § 1140.  Section 510 provides, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan[.]

29 U.S.C. § 1140.  To state a claim for interference with benefits under Section 510, a plaintiff must allege facts sufficient to plausibly establish that he was entitled to an ERISA-protected right, that he suffered an adverse employment action, and that the employer acted with the specific intent to interfere with this right.  *Kimbro v. Atl. Richfield Co.*, 889 F.2d 869, 881 (9th Cir. 1989); *Bastein v. ABF Freight Sys., Inc.*, No. 2:12-cv-02755, 2014 WL 813118, at *3 (E.D. Cal. Feb. 28, 2014) (citations omitted).  To show that the adverse employment action was taken for the purposes of interfering with the employee's rights, the plaintiff must adequately allege that the exercise or receipt of his benefit-plan rights was the "motivating force behind the discharge."  *Bogue v.*

11

*Ampex Corp.*, 976 F.2d 1319, 1327 (9th Cir. 1991) (quoting *Kimbro*, 889 F.2d at 881). Put another way, a plaintiff fails to state a claim for interference with ERISA benefits when he does not adequately allege that the defendant had the specific intent to interfere with ERISA-protected benefits. *See Stout v. Health Mgmt. Assocs., Inc.*, No. CV-10-3080-EFS, 2011 WL 1225575, at *3 (E.D. Wash. Mar. 31, 2011) (collecting cases).

In its previous Order, the Court concluded that Plaintiff had met the first element by alleging that he was entitled to retirement benefits pursuant to his ERISA-governed benefits plan. *Powers*, 2015 WL 5188714, at *6. The Court assumed for the purposes of the second element that Plaintiff had adequately alleged an adverse employment action through constructive discharge. *Id.* However, the Court concluded that Plaintiff had not plausibly alleged that his employer took the adverse employment action with the specific intent to interfere with his ERISA right—and instead, the FAC allegations gave rise to an inference that the constructive discharge occurred due to age discrimination. *Id.* at *7. Thus, it is only the third element of an interference claim that Plaintiff needed to amend. The Court advised Plaintiff that any amended Section 510 claim should include facts that give rise to a plausible inference of intent to deny benefits—for example, that AT&T Services purposefully concealed facts about the availability of certain retirement benefits. *Id.*

The SAC interference claim alleges that "Defendant discriminated against [Plaintiff] by . . . pressuring him to retire, while at the same time management not informing him that if he retired at that time he would be denied retirement benefits" and that Ms. Cooper's urging that Plaintiff should retire in 2011 misled him into believing that if he retired in 2011 he would receive the same retirement benefit offered in the 2010 retirement package he reviewed. (Dkt. No. 39 ¶¶ 121-122.) Notably, Plaintiff never alleges that Pacific Bell—or his managers Ms. Cooper or Mr. Myers—had specific intent to interfere with his retirement benefits—only that they repeatedly asked when he would retire, did not answer questions about retirement benefits, and did not inform him that he would not be entitled to certain benefits. This is not enough to allege specific intent to interfere with ERISA benefits. *See Wimberly v. Reliance Standard Life Ins. Co.*, No. 2:11-CV-00430-PMP-LRL, 2011 WL 2847583, at *4 (D. Nev. July 14, 2011).

Ultimately, Plaintiff has not adequately alleged a causal connection between Pacific Bell's

alleged constructive discharge and the denial of benefits. The SAC still alleges that Ms. Cooper and Mr. Myers forced Plaintiff to retire because of his age. There are no direct allegations that they did so to prevent him from obtaining benefits nor allegations that plausibly support such an inference. For example, there is no allegation that Plaintiff would have been eligible for retirement benefits had he waited until 2012 to retire, which alone is not even enough to plausibly allege an inference of intent to interfere with ERISA rights. *See Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir. 1990) (no action lies where the alleged loss of ERISA-protected rights is a mere consequence, as opposed to a motivating factor behind, the termination).

Plaintiff also alleges that the September 2010 retirement package was offered to trick him into believing that he would also be eligible for the same package in 2011. The 2010 retirement package was withdrawn. There are no allegations that Plaintiff asked the plan administrator whether the 2010 package still applied, that anyone at AT&T Services or even Pacific Bell informed him that it would still apply, or that anyone implied that the 2010 early retirement package was still available. And in any event, the 2010 offer of retirement benefits actually undermines Plaintiff's argument that Pacific Bell sought to prevent him from obtaining benefits, inasmuch as it shows the company offered them to him before. In short, the 2010 package does not give rise to a plausible inference of intent to interfere with retirement benefits, either.

From Plaintiff's written opposition it appears that the gravamen of his interference claim is slightly different from how it is alleged in the SAC. Specifically, he argues that three additional allegations give rise to a plausible inference of intent to interfere with benefits. First, Plaintiff alleges that Ms. Cooper and Mr. Myers failed to answer questions about his retirement benefits, misleading him into believing he would receive them. But these two individuals are not alleged to be plan fiduciaries and therefore had no duty to make representations about the plan or to inform Plaintiff of his rights thereunder. *See CSA 401(k) Plan v. Pension Prof'ls, Inc.*, 195 F.3d 1135, 1141 (9th Cir. 1999) (noting that non-fiduciaries do not have an affirmative duty to inform employees of benefits); *Law v. Ernst & Young*, 956 F.2d 364, 372 (1st Cir. 1992) (deeming the employer the plan administrator where it responded to the plaintiff's inquiries about benefits elections and provided other required information under the plan); *cf. Varity v. Howe*, 516 U.S.

13

1  489, 492 (1996) (finding employer liable under Section 510 where it acted in a fiduciary capacity
2  by making affirmative intentional misrepresentations about benefits to employees).  Given that
3  they had no duty to answer his questions, their failure to do so does not give rise to a plausible
4  inference of intent to interfere with his retirement benefits.

Next, Plaintiff alleges that Pacific Bell sent false status codes to AT&T Services and the EEOC indicating that Plaintiff was not retired when he actually was.  Notably, this theory does not appear in the SAC.  In any event, the allegedly false status codes occurred *after* the constructive discharge, so this is not a basis to conclude that the intent of the constructive discharge itself was to deny benefits.

Finally, Plaintiff identifies his allegations that "AT&T uses Pac Bell managers to help enrich the Plan Sponsor" and "[a] bonus for denial of benefits may exist." (Dkt. No. 39 ¶¶ 88-89.) But there are no other allegations that plausibly suggest that Ms. Cooper and Mr. Myers forced Plaintiff to retire to cut plan costs by withholding benefits or to obtain such a bonus.  Thus, these allegations do not support a plausible inference that Plaintiff's constructive discharge was carried out with specific intent to interfere with his retirement benefits.

In short, Plaintiff's SAC fails to plausibly allege that his constructive discharge was imposed with the specific intent to deny him retirement benefits.  Instead, as with the FAC, the factual allegations allege only that age discrimination was the motivating factor behind the termination.  The interference claim must therefore be dismissed.  The dismissal will be without leave to amend as the Court questioned Plaintiff extensively at oral argument about the basis for this claim and his responses indicate that he cannot allege facts sufficient to state such a claim.

### III.    Claim Four: Failure to Provide Plan Documents

The SAC's fourth claim, against AT&T Services only, is entitled "Failure to Provide Plan Documents, Bad Faith, and Abuse of Discretion[.]"  (Dkt. No. 39 at 21.)  Plaintiff concedes that bad faith and abuse of discretion are not actually part of this cause of action, as he failed to address Defendants' argument in his opposition.  *See Ardente*, 2010 WL 546485, at *6.

In the Court's previous Order reviewing the FAC, the Court confirmed that Plaintiff brings this claim under ERISA Section 501(a), 29 U.S.C. § 1132(a)(1)(A), which authorizes a cause of

action to enforce ERISA Section 502(c) and provides that

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable . . . for such refusal[.]

29 U.S.C. § 1132(c)(1)(B). To state a claim for violation of Section 502(c), a plaintiff must allege "(1) that he is a plan participant or beneficiary; (2) that he has made a written request to a plan administrator for information that falls within the purview of ERISA's disclosure requirements; and (3) that the plan administrator failed to provide the requested documents within thirty days of the written request." *Wargotz v. NetJets, Inc.*, Civ. No. 09-4789 (WJM), 2010 WL 1931247, at *3 (D.N.J. May 13, 2010) (citing 29 U.S.C. § 1132(c)(1)(B)); *see also* 11 U.S.C. § 1024(b)(4) (requiring the plan participant to make the request for documents in writing). Reviewing the FAC's Section 502(c) claim, the Court concluded that Plaintiff met the first element, but not the latter two. The Court instructed Plaintiff that if he wished to bring a Section 502(c) claim in his amended complaint, he must allege "when such requests [for documents] were made, whether they were in writing, and what documents were sought." *Powers*, 2015 WL 5188714, at *8.

The SAC Section 502(c) claim incorporates by reference all preceding factual allegations and also alleges that "[t]he Pension Summary Plan Description and requests for documents contrary to the AT&T's position regarding Plaintiff 'retirement' status were improper" and "[b]y failing to provide Plaintiff with these documents, AT&T harmed Plaintiff and prevented him from obtaining the benefits to which he was entitled." (Dkt. No. 39 ¶¶ 126-127.) Defendants contend that Plaintiff has failed to cure the defects identified in the FAC—*i.e.*, that he still fails to plausibly allege the second and third elements of a Section 502(c) claim.

Several SAC paragraphs include allegations that Plaintiff requested documents or that Defendants failed to provide documents, and these are the paragraphs on which Plaintiff relies to insist that he has plausibly alleged a Section 502(c) claim. But these paragraphs do not allege a request in writing for a particular document that was not provided. (*See, e.g.*, Dkt. No. 39 ¶¶ 55, 61, 70, 74, 75, 77, 91, 95, 100, 110, 126, 127.) For example, paragraph 55 does not even allege that Plaintiff sent a written request for documents. Paragraph 61 alleges vaguely that Plaintiff

"sent a request for materials" on two occasions requesting "copies of information including some paperwork within the scope of AT&T that caused Plaintiff to not be retired[,]" but he neither alleges that he requested the Pension SPD, that it "caused Plaintiff to not be retired" or that AT&T Services did not send the documents he then requested, and indeed, in other paragraphs it is clear that AT&T Services sent him a variety of documents on which it relied.

The remaining allegations on which Plaintiff relies fare no better. Paragraphs 70, 74, 75, 77, and 91 allege that AT&T Services did not send certain documents, including the Pension SPD and a more recent guide—no other information about the guide is alleged—but not that Plaintiff requested it in writing. Paragraph 95 alleges that the company's EEO spokesperson refused to send Plaintiff a 2010 EEO guideline, but this has nothing to do with his adverse benefits determination or ERISA disclosure requirements. Paragraph 100 alleges vaguely that Plaintiff's telephone requests for information about his claim denials went unanswered.

Ultimately, perhaps conceding the lack of a written request for the document at the heart of his claim, Plaintiff appears to allege that AT&T Services had a statutory obligation to send the Pension SPD "automatically[.]" (Dkt. No. 48 at 12.) But Plaintiff does not and cannot cite any statutory or regulatory authority that requires as much. At oral argument the Court asked Plaintiff what documents he requested in writing. He replied that he requested a copy of the June 2013 denial letter as he had left his copy with an attorney. As AT&T Services had initially provided him with a copy, this written request cannot state a claim. Accordingly, the Section 502(c) claim will be dismissed without leave to amend.

**CONCLUSION**

For the reasons described above, the Court GRANTS Defendants' motion to dismiss the second, third and fourth claims in the SAC without leave to amend.

Plaintiff is directed to visit the Court's Legal Help Desk to inquire whether he is eligible for appointment of counsel for the purpose of representation at a settlement conference. The Court refers this action to a randomly-assigned magistrate judge for a settlement conference to occur within the next 90 days, or as early thereafter as is convenient to the magistrate judge. As soon as possible, but at least 30 days before the settlement conference, Defendants shall provide Plaintiff

1  with complete copies of the pension plan and health care benefits plan, along with any of Ms.
2  Cooper's 2011 emails regarding Plaintiff's retirement.
3      The Court continues the case management conference set for January 7, 2016 to March 24,
4  2016 at 1:30 p.m.  The parties shall submit a Joint Case Management Conference Statement that
5  includes a proposed case schedule one week before the Conference.
6      This Order disposes of Docket No. 43.
7      **IT IS SO ORDERED.**
8  Dated:  December 7, 2015

JACQUELINE SCOTT CORLEY
United States Magistrate Judge